UNITED STATES, Appellee

v

RAYMOND JENKINS, Seaman Recruit,
U. S. Navy, Appellant

9 USCMA 381, 26 CMR 161

No. 10,749

Decided June 20, 1958

*Ensign David M. Clinard,* USNR, argued the cause for Appellant, Accused.

*Lieutenant Colonel Charles H. Beale, Jr.,* USMC, argued the cause for

Appellee, United States. With him on the brief was *Commander Craig McKee,* USN.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Among the specifications of which the accused was convicted are two alleging that he wrongfully communicated a threat, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The threat alleged in specification 2, Charge IV, is that the accused declared to Airman Cooney that " 'he was going to get' " Lieutenant Bowers. Specification 3 of the same charge sets out a declaration by the accused to the effect that he " 'would get Cooney when he came back through Albuquerque.' " On this appeal the accused contends that the law officer's instructions on these offenses were prejudicially erroneous.

Two aspects of the law officer's instructions are challenged by the accused: (1) He maintains that the instructions, in effect, advised the court-martial that the declarations constitute threats as a matter of law instead of submitting that issue to it as one of the questions to be decided in the light of all the evidence.[1] (2) He disputes the law officer's statement that a threat "means a declaration of one's purpose or intention to do an act which is wrongful." Recently we noted the questionable nature of the first of the challenged instructions. United States v Hazard, 8 USCMA 530, footnote 1, page 533, 25 CMR 34. And long ago we emphasized that the second instruction presents a real risk of harm to the accused because it substitutes a broader test for determining the illegality of the accused's words than the law allows. United States v Davis, 6 USCMA 34, 19 CMR 160. We pointed out that a threat is an "avowed present determination or intention to injure presently or in the future." The definition given by the law officer is not so limited. Rather it permits the court-martial to find that if the accused's declaration indicates a purpose to do any "act which is wrongful," it can find him guilty as charged.

In the *Davis* case, we held that the law officer's enlargement of the legal basis upon which the accused could be convicted was not prejudicial because there was only one declaration which manifestly "involved a promise of injury to a person"[2] and the court-martial could not have been misled as to "what they were required to find." Ibid, page 38. Accord, United States v Kelly, 9 USCMA 26, 25 CMR 288. The meaning of the statements in this case is not so certain. Considered by themselves, they do not unqualifiedly indicate an act of injury as distinguished from some other kind of wrongful act.[3] If, therefore, the court-martial predicated its findings upon a wrongful act other than one to injure, the findings are not sanctioned by law. Cf. United States v Jenkins, 1 USCMA 329, 3 CMR 63.

The evidence relating to the accused's declaration regarding Lieutenant Bowers is meager. Cooney testified by stipulation that on December 13, 1956, he was on duty at the guardhouse at Kirtland

[1] The controversial instruction is subdivision 1 in the following enumeration by the law officer of the elements of the offense: "The second and third specifications of the fourth charge involve communications of threats. The elements of these offenses are as follows: (1) that at the time and place alleged, the accused, without justification or excuse, wrongfully communicated to Robert Cooney, in both instances, a threat to—with respect to Specification 2—get First Lieutenant Lowell D. Bowers; with respect to Specification 3, a threat that he would get Cooney; (2) that under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces."

[2] The threat in the Davis case was as follows: "Melton, I'll kill you . . . in civilian life or Army life."

[3] We need not consider whether a threat to injure one's property or reputation, as distinguished from injury to his person, will support a conviction for this offense.

Air Force Base. The accused was confined in the guardhouse. The accused told Cooney that "'he was going to get'" Lieutenant Bowers. Earlier that day the Lieutenant had ordered the accused to remove his clothing, and he had refused to comply. Possibly, the court-martial could find from this evidence, that the accused's declaration indicated an intent to injure, but it could also conclude some other wrongful act was contemplated. As a result, the law officer's overly broad definition of a threat was prejudicial. Cf. United States v Jett, 5 USCMA 476, 18 CMR 100.

Similarly, the evidence relating to the second alleged threat is equivocal. According to Cooney's stipulated testimony, he saw the accused on December 15 at about 6:00 a.m. The accused asked him to go to the men's room with him and there engage in a fight with him. Cooney further testified that when he refused the invitation because "regulations prohibited fighting," the accused told him that he and his companion "would get me when they came back through Albuquerque." The accused denied making the statement. He maintained that the only remark he made about "get[ting]" Cooney was to ask him "if he [Cooney] would walk back to the latrine so that we could even up the score—just me and him and not bring his two buddies along." The Government argues that this testimony amounts to a confession of guilt because it shows that the accused's intention "was to get Cooney by fighting him." Acceptance of an invitation to engage in a fight may result in personal injury to the invitee, but the invitation is not a threat. However, the court-martial could find the offer to fight was a wrongful act, and on that basis, determine that the accused was guilty of the offense charged. See 4 Am Jur, Assault and Battery, §§ 83–84. A finding of guilty predicated on that act would be improper. Again, therefore, the law officer's incorrect definition of a threat presents a definite risk of prejudice to the accused.[4]

Two other assignments of error are urged by the accused. One concerns the sentence. As to that, our recent decision in United States v Modesett, 9 USCMA 152, 25 CMR 414, provides a complete answer. The final error, which concerns the adequacy of the post-trial review, is conceded by the Government. See United States v Withrow, 8 USCMA 728, 25 CMR 232.

The decision of the board of review is reversed. The findings of guilty of specifications 2 and 3, Charge IV, and the sentence are set aside. The record of trial is returned to The Judge Advocate General of the Navy for reference to a competent convening authority for further proceedings under Articles 61 and 64, Uniform Code of Military Justice, 10 USC §§ 861, 864. In his discretion, the convening authority can dismiss specifications 2 and 3, Charge IV, and reassess the sentence or order a rehearing on those charges and the sentence.

Judges LATIMER and FERGUSON concur.

---

[4] Our holding on this point makes it unnecessary to consider the other claim of instructional error.