OPINION OF THE COURT
KRAUSS, Judge:
(Part I — Findings)
A military judge, sitting as a special court-martial empowered to adjudge a bad-conduct discharge, convicted appellant, pursuant to his pleas, of two specifications of absence without leave (AWOL) in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886 (2006) [hereinafter UCMJ], Contrary to appellant’s pleas, the military judge convicted him of three specifications of communicating a threat in violation of Article 134, UCMJ, 10 U.S.C. § 934. Manual for Courts-Martial, United States (2008 ed.) [hereinafter MCM ], pt. IV, ¶ 110. The military judge acquitted appellant of a fourth specification of communicating a threat in violation of Article 134, UCMJ. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for 164 days, and reduction to the grade of E-1. Appellant was credited with 164 days of confinement against the sentence to confinement.
Appellant’s case is now before this court for review under Article 66, UCMJ, 10 U.S.C. § 866. He raises four assignments of error asserting that the communications that served as the subject of his prosecution under Article 134, UCMJ, were privileged un *554 der Military Rule of Evidence [hereinafter Mil. R. Evid.] 513, that the military judge erred by failing to suppress those statements he made to the psychiatrist involved in the case, that the evidence is legally and factually insufficient to support his convictions for communicating a threat, and that the military judge erred by admitting hearsay evidence as part of the government’s ease in aggravation. Having examined the record of trial and considered the briefs and arguments of the parties, we find the evidence both legally and factually insufficient to support appellant’s convictions for communicating a threat. We need not, therefore, address the issues relative to the psychotherapist-patient privilege under Mil. R. Evid. 513 or the applicability of Article 31, UCMJ, 10 U.S.C. § 831, under the circumstances.
BACKGROUND
Private (PV2) Gean, an angry young man aggrieved by the various difficulties of his service in the Army, and life in general, was apparently apt to utter rather graphic remarks about what he would like to do to some of those who crossed him. Private Gean himself sought help to cope with his anger and the command apparently independently acquired concern over PV2 Gean’s condition and state of mind based on his behavior and utterances he made.
Whatever it is PV2 Gean did say or do that prompted his commander to direct the psychiatric evaluation that led to his prosecution for communicating threats, we do not know. The only thing the record establishes with any degree of reliability is that the commander believed PV2 Gean may have constituted a threat to himself or others and that the psychiatrist, duty-bound to assess the man for threats to the safety of the community, understood that he had made threats prior to being evaluated by her.
This understanding prompted the psychiatrist to direct PV2 Gean to respond to her questions about threats that he may have made. Private Gean was not free to leave and, according to the psychiatrist, not only expected to answer the questions posed but required to do so as the command directed the evaluation and her duty was to conduct the evaluation. If PV2 Gean did not respond, she could not effectively assess the danger appellant posed to himself or others. Never were Article 31 rights rendered and never did PV2 Gean apparently do otherwise than respond honestly to the questions posed. For responding to the questions he dutifully answered, PV2 Gean stands convicted of communicating a threat.
The utterances for which he stands convicted are that “he would break Sergeant CM’s legs,” “he would cut Sergeant G’s mouth open,” and “he would break [Specialist SW’s] jaw,” or words to that effect. The psychiatrist testified that she understood his statements to constitute actual threats.
LAW AND DISCUSSION
Of the essential elements of proof to the offense of communicating a threat, we here primarily concern ourselves with the penultimate: that the communication was wrongful. MCM, pt. IV, ¶ 110.b.(3).
Whether a threat is wrongful depends on the circumstances within which it is uttered and the intent and purpose behind the statement. If a threat is uttered in jest or for a legitimate purpose, it is not wrongful as contemplated under Article 134, UCMJ. See United States v. Brown, 65 M.J. 227, 231-32 (C.A.A.F.2007); United States v. Schmidt, 16 U.S.C.M.A. 57, 36 C.M.R. 213, 215-16, 1966 WL 4447 (1966); MCM, pt. IV, ¶ 110c. We hold that when a soldier is directed to undergo psychiatric evaluation, required to respond to questions about threats, or his thoughts of threats, as part of that evaluation, does so honestly, and in doing so communicates a threat, such a threat is not wrongful as a matter of law. See Schmidt, 36 C.M.R. at 217. See, e.g., United States v. Wright, 65 M.J. 703, 705 (N.M.Ct.Crim.App. 2007).
Compelled by command direction and the demands of the evaluating psychiatrist to respond, PV2 Gean responded honestly in hopes of receiving help for his problems coping with anger and stress. In doing so he uttered what might be considered threats. The subjects of these threats were third *555 parties.[1] While appellant made no jest, the threats he made were uttered for a legitimate purpose — a purpose shared by all interested parties: his command, the evaluating psychiatrist and appellant himself. That purpose was a psychiatric evaluation to determine whether he was a danger to himself or others and in any event how to best address his mental and emotional state and the behavior he exhibited. The law is not so dim as to damn a soldier for responding honestly to a psychiatrist when compelled by command directive and psychiatric need to do so.[2]
Senior Judge JOHNSON and Judge BURTON concur in Part I.

. Nothing in this decision immunizes a soldier from potential prosecution under Article 134 for threats levied directly against an evaluating psychiatrist or threats made outside the scope of responses to questions posed during any such evaluation.

. Because we find that conviction for communicating a threat is invalid as a matter of law under these circumstances, holding that such communication cannot be wrongful as contemplated under Article 134, UCMJ, we need not address in detail similar difficulties of proof with both the first and terminal elements of the offense in this case. Suffice it to say that, at the least, we maintain reasonable doubts over whether appellant’s utterances actually expressed a present determination or intent to wrongfully injure or whether such utterances could possibly prejudice good order and discipline or tend to discredit the service under the circumstances of this case. UCMJ art. 66(c). See also United States v. Cotton, 40 M.J. 93, 95 (C.M.A.1994); MCM, pt. IV, ¶¶ 60.c.(2)(a), (3); 110.b.(1), (4); 110.c.